IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

FIRST EVANGELICAL LUTHERAN
CHURCH OF LINCOLN,
NEBRASKA, a non-profit corporation,

Plaintiff,

vs.

BROTHERHOOD MUTUAL
INSURANCE COMPANY, an Indiana
company,

Defendant.

4:23-CV-3180

MEMORANDUM AND ORDER

This is a hail damage case. The plaintiff, First Evangelical Lutheran Church of Lincoln, Nebraska, alleges its roof was damaged in a hailstorm. Allegedly, the defendant, Brotherhood Mutual Insurance Company, wrongfully delayed or denied certain benefits under its insurance policy. *See* filing 1 at 8. This matter is before the Court on the defendant's motion for summary judgment, filing 64, based in part on its motion to exclude two of the plaintiff's expert witnesses, filing 65. The plaintiff has also moved to exclude a defense expert witness. Filing 69.

## I. BACKGROUND

The plaintiff owns a church in Lincoln, Nebraska, insured under a replacement cost commercial property insurance policy issued by the defendant. *See* filing 72-2. The building is insured up to $6,318,000. Filing 72-2 at 3. The parties do not dispute, for purposes of summary judgment, that the policy was in effect at all relevant times.

The church's roof is made of specialty Ludowici clay tile. Filing 79 at 1. New

tile was installed in 2012, and cracked tiles were replaced in 2017 and 2018. Filing 72-12 at 18. Leaking windows were resealed in 2018 and 2019. *Id.* The plaintiff timely submitted an insurance claim alleging that a windstorm or hail event on April 12, 2020 caused damage to the church. Filing 79 at 3. The plaintiff alleges its clay tiles, aluminum gutters, copper flashing, and other metal components suffered extensive damage, some of which allegedly caused interior leaks. *See* filing 79 at 10; filing 72-5 at 120.

The chairman of the church's property committee lives close to the church. Filing 79 at 9. He testified that on the morning of April 12, 2020, he woke up to the sound of hail, and his personal home and car suffered hail damage from the storm. Filing 74 at 9. He visited the church the same day, and saw broken pieces of clay tile laying on the ground and on the roof, alongside downed tree limbs and branches. Filing 74 at 9. A volunteer doing yardwork for the church saw "bits and pieces of tile on the ground and tree debris" on April 13. Filing 74 at 11.

Toby Duncan, a commercial and residential roofing consultant specializing in clay tile, slate, and copper roofs, was inspecting properties in the Lincoln area on April 12, shortly after the storm passed. Filing 74 at 3. He approached the church on that day and noticed hail damage; he inspected the roof with the church's permission a few days later, on April 15. Filing 74 at 3; *see also* filing 72-1 at 16. Duncan photographed and measured the damage to the tiles and observed tile fragments in the church's gutters and on lower roof sections. Duncan estimated the damage would cost $1,530,972.16 to repair. *See* filing 1 at 3. The plaintiff submitted Duncan's estimate to the defendant on or about June 10, 2020. *See* filing 1 at 3.

The defendant sent an adjuster to investigate the plaintiff's claim on June 11, 2020. Filing 1 at 3; filing 14 at 3. The parties dispute, and the record is unclear, as to the adjuster's ultimate findings. *Compare* filing 72-3 at 10 (adjuster

documented $6,919.19 in damages), *with* filing 78 at 11 (adjuster's estimate was approximately $564,000). According to the plaintiff, the adjuster recommended the defendant dispatch an engineer to further inspect the property. *See* filing 72-3 at 10-11.

Haag Engineering inspected the property on behalf of the defendant and issued its report on October 5, 2020. *See* filing 72-14 at 12. According to the plaintiff, Haag's evaluation included testing four squares of the entire church, which was then extrapolated to the rest of the building. Filing 72-7 at 4. Haag determined that some of the noticeable damage to the roof was not caused by hail, and instead was caused by handling, transport, repair, or installation of the tile. *See* filing 72-7 at 4. Haag also determined there was no covered damage to the church's downspouts or other metal accessories. *See id.*; filing 72-14 at 27.

 The plaintiff alleges that in November 2020, the defendant estimated $6,919.19 in damages to the church building, in part[1] based on Haag's report. The defendant agreed to pay for 160 broken tiles identified by Haag. *See* filing 78 at 25. After applying the plaintiff's $1,000 deductible, the defendant issued a check for $5,919.19. *See* filing 1 at 4; filing 78 at 11. This was apparently meant by the defendant to represent the full replacement cost, not the actual cash value cost, of the damaged tiles. *See* filing 78 at 23.

In August 2021, Matthew Merrell, a licensed professional civil engineer, inspected the church. He documented damage to the church's gutter system and roof, and, after reviewing meteorological data from a consultant, he opined the damage was consistent with hail damage. *See* filing 72-7 at 2-3. Merrell recommended that the Ludowici clay roof tiles be fully replaced "based on the

---

[1] In a Rule 30(b)(6) deposition, the defendant was unable to identify on what estimate or adjustment the $5,919 payment was based. *See* filing 78 at 11-13.

widespread amount of damage and the nailing pattern." Filing 72-7 at 4. He also recommended replacing the gutter system, roof appurtenances, copper roof valleys, copper flashing, parapet caps, and an air conditioning unit. *Id.* Duncan agrees that a "full replacement" of the roof is "the most cost effective method to bring the church back to its pre-loss condition and comply with all manufacture's specifications, building codes, and industry standards." Filing 72-5 at 89.

For reasons not explained in the record, but perhaps related to Merrell's report, *see* filing 1 at 5, the defendant issued another check to the plaintiff for $3,817.16 on January 27, 2022. Filing 78 at 16. The plaintiff sent a demand letter on May 17, 2022, "outlining deficiencies in the claims handling." Filing 1 at 5. In response, the defendant sent Vincent Hobson, a senior project manager and roofing consultant, to inspect the property.

Hobson identified twelve tiles damaged by hail, and prepared an estimate of $19,811. Filing 78 at 25. The defendant issued a check for $168,556.78 on September 20, 2022. Filing 78 at 14. That number was calculated using Hobson's "per-tile cost" estimate, and applying that number to Haag's finding that 160 tiles were damaged. Filing 78 at 25. According to a senior adjuster for the defendant, the defendant "agreed to 160 tiles," so it would "stick with" its prior determination to pay for 160 tiles. Filing 78 at 25. On March 6, 2023, the defendant allegedly told the plaintiff that it would not pay anything more on the claim. Filing 1 at 5; *see* filing 14 at 5.

The plaintiff then filed this lawsuit, alleging "damages in the proximate amount of at least $1,979,294.03, less any amounts for applicable deductibles and prior payments, by way of unpaid insurance proceeds and benefits[.]" Filing 1 at 7. The plaintiff also seeks interest, litigation costs, consequential damages, attorneys' fees, and "any other further relief the Court or jury deems fair and reasonable." Filing 1 at 9.

## II. STANDARD OF REVIEW

Summary judgment is proper if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). The movant bears the initial responsibility of informing the Court of the basis for the motion, and must identify those portions of the record which the movant believes demonstrate the absence of a genuine issue of material fact. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). If the movant does so, the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial. *Id.*

On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts. *Id.* Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the evidence are jury functions, not those of a judge. *Id.* But the nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts. *Id.* In order to show that disputed facts are material, the party opposing summary judgment must cite to the relevant substantive law in identifying facts that might affect the outcome of the suit. *Quinn v. St. Louis Cty.*, 653 F.3d 745, 751 (8th Cir. 2011). The mere existence of a scintilla of evidence in support of the nonmovant's position will be insufficient; there must be evidence on which the jury could conceivably find for the nonmovant. *Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 791-92 (8th Cir. 2011). Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Torgerson*, 643 F.3d at 1042.

## III. DISCUSSION

### 1. MOTION FOR SUMMARY JUDGMENT

The defendant argues it is entitled to summary judgment because the Court should exclude the plaintiff's experts, and, without expert opinion, the plaintiff cannot establish causation. *See* filing 67 at 2. The defendant also argues that the plaintiff, as a matter of law, cannot show it is owed replacement costs for the roof.

### *Causation*

The defendant asserts (without any citation)[2] that courts in this district "have repeatedly recognized that hail-damage causation presents" the type of "technical question" requiring expert testimony. Filing 67 at 5. While the defendant has moved to exclude some of the plaintiff's experts' opinions, it only seeks to exclude the experts' opinions that a *specific* hailstorm caused the damage, not the opinions that the damage was caused by hail. *See* filing 68 at 14, 23. That *Daubert* motion is discussed below, but, even if the Court granted that motion in full, the defendant's argument is unavailing.

To determine whether expert testimony is required to prove causation, courts in Nebraska consider whether "'the particular issue can be determined from the evidence presented and the common knowledge and usual experience' of the fact finders." *Canas v. Md. Cas. Co.*, 459 N.W.2d 533, 539 (Neb. 1990) (quoting

---

[2] Both parties had problems with accurate citations. The defendant's briefing rarely included pinpoint citations, leaving the Court poorly equipped to identify the law upon which it relied. *E.g.,* filing 67 at 4. The defendant also regularly cited to paragraphs in its statement of undisputed facts (filing 66) that don't exist. *E.g.,* filing 67 at 8. For its part, the plaintiff often cited to deposition testimony or deposition exhibits that it did not provide to the Court. *E.g.,* filing 79 at 11. The plaintiff also failed to file each item of evidence separately as required by NECivR 7.1(a)(2)(B).

6

*Yount v. Seager*, 150 N.W.2d 245, 250-51 (Neb. 1950)). In Nebraska, expert testimony is generally required to prove subjective medical injuries, *see Johnson v. Friesen*, 79 F.4th 939, 944 (8th Cir. 2023), and causation in strict products liability or toxic tort suits, *see Grant v. Pharmative, LLC*, 452 F. Supp. 2d 903, 906 (D. Neb. 2006).

The cases cited by the defendant *requiring* expert testimony to prove causation arise in those contexts. *See* filing 67 at 6. The defendant also cites to *Bliv, Inc. v. Charter Oak Fire Insurance Company*, where a plaintiff in a hail-damage case was without causation evidence after the district court excluded its expert. 159 F.4th 539, 544 (8th Cir. 2025). But nothing in that case stands for the proposition that expert testimony is required for these types of hail-damage cases. *Compare id.* (plaintiff acknowledged that without its expert's opinions, "it lacked admissible evidence showing a loss covered under the insurance policy"), *with Johnson*, 79 F.4th at 944 (Nebraska law *requires* "expert medical testimony to establish causation" for subjective injuries).

But the defendant has not cited, nor can the Court identify, any authority requiring a plaintiff in Nebraska to present expert testimony that a particular storm produced particular-sized hail of a particular shape that caused the particular damage at issue. The plaintiff has ample lay witness testimony that a hailstorm occurred at or near the church on April 12, 2020. *See* filing 74 at 3; filing 74 at 9; filing 74 at 11. And the plaintiff has presented opinions from experts, not subject to the *Daubert* motion, that the building suffered hail damage. Even without specific expert testimony that a storm on April 12 caused the damage at issue, it is within a lay juror's "common knowledge and usual experience" to infer that a hailstorm, which was evidenced by eyewitnesses, caused the damage, which is evidenced by experts. This inference is further supported by two witnesses' observations of broken pieces of tile on the ground

and on the roof, alongside tree debris, shortly after the alleged storm. Filing 74 at 9; filing 74 at 11.

On summary judgment, the plaintiff need only adduce evidence supporting an inference that the damage alleged was covered by the insurance policy. *See, e.g., Rohde v. Farmers Alliance Mut. Ins. Co.*, 509 N.W.2d 618, 625 (Neb. 1994) (insured has burden to bring his claim "within the limitations of the policy"). The summary judgment record now before the Court indicates the plaintiff can meet that burden at trial.

### Replacement Cost Benefits[3]

The defendant argues it is entitled to summary judgment because the plaintiff has no evidence of recoverable damages. The defendant asserts the plaintiff did not satisfy the conditions precedent to recovering the replacement cost value, so the only recoverable damages are for actual cash value—of which the plaintiff has allegedly failed to present evidence.

The plaintiff's policy was for replacement cost coverage. *See* filing 72-2 at 3. The Nebraska Supreme Court explained the difference between "replacement cost coverage" and "actual cash value" in *D&S Realty, Inc. v. Markel Insurance Company*, 816 N.W.2d 1 (Neb. 2012). Replacement cost insurance is more expensive, as it is more than indemnity coverage; replacement cost policies

---

[3] The plaintiff seeks leave to file a sur-reply brief to address this issue. Filing 86. The arguments therein respond to arguments raised in the defendant's brief in support (filing 67), not any *new* arguments raised in the defendant's reply brief (filing 81). Rather, the defendant's reply brief properly responded to the plaintiff's arguments in its brief on this issue. The plaintiff's motion for leave is therefore denied, and the Court will not consider the arguments therein because they could have been advanced in the plaintiff's brief in opposition. The Court has, however, in its discretion, considered the evidence attached to the brief as part of the summary judgment record as a whole.

protect the insured against the hazard that repairing damage will cost more than the insured can afford. *Id.* at 11.

In most replacement cost insurance policies, including the one in this case, an insurer does not pay the full replacement cost until the insured actually repairs or replaces the damaged property. *Id.* at 12; filing 72-2 at 61 ("Replacement cost valuation does not apply until the damaged or destroyed property is repaired or replaced."); filing 72-2 at 62. And, as is typical in such contracts, the insured "may make a claim for actual cash value before repair or replacement takes place, and later for the replacement cost if" the insured notifies the insurer of that intent. Filing 72-2 at 61.

However, the requirement to actually repair or replace property will be excused if an insurer interferes with the insured's ability to make repairs. *D&S Realty*, 816 N.W.2d at 15. Whether the requirement is excused is a question of fact to be decided under all of the circumstances. *Id.* at 15-16. For example, an insured's performance may be excused where an insurer fails to "assure" that it will pay full replacement costs once repairs are complete. *See id.* at 11 (discussing *Bailey v. Farmers Union Co-op. Ins. Co. of Neb.*, 498 N.W.2d 591, 598 (Neb. Ct. App. 1992)).

The defendant asserts this "doctrine of prevention" is only available in "narrow circumstances," which do not include good faith scope or coverage disputes. Filing 81 at 10. But the Nebraska Supreme Court expressly held that the doctrine is not limited to bad faith. *D&S Realty*, 816 N.W.2d at 13. An insurer's good faith denial that "contributed materially to the nonoccurrence of the condition" may, depending on the particular facts and circumstances, excuse the condition. *Id.* at 15-16.

Where parties dispute the value or scope of a claim, and where the insurer has not agreed to additionally pay for the repairs once conducted, the insured has

no obligation to perform the repairs. *See D&S Realty*, 816 N.W.2d at 15 (discussing *Rockford Mut. Ins. Co. v. Pirtle*, 911 N.E.2d 60, 66 (Ct. App. Ind. 2009)); *accord Bailey*, 498 N.W.2d at 598 (insured "was prevented from satisfying the condition of rebuilding and claiming costs" by the insurer's "refusal to assure" the insured that it would pay for rebuilding costs up to the policy limit). The defendant relies on *Kolls v. Aetna Cas. & Surety Co.*, 503 F.2d 569 (8th Cir. 1974), and *Henderson v. State Farm Fire and Cas. Co.*, 649 F. Supp. 3d 748 (N.D. Iowa 2022), but in those cases, the insured received the agreed-upon actual cash value payment for the damaged property that needed to be repaired or replaced. Insureds cannot be expected to repair, rebuild, or replace property without some guarantee that they are entitled to coverage. *See D&S Realty*, 816 N.W.2d at 17.

That doesn't mean that, if the plaintiff is ultimately successful at the close of this lawsuit, it is entitled to the full replacement cost value of the damaged property. Rather, excuse of the condition precedent may be "temporary." *See id.* at 16. The insured may be excused from performance "for such time as it appears the insurer will not honor its obligations under the policy," like during litigation, so long as the insured is still capable of repairing the property at issue. *See id.* at 17.[4]

Here, the record indicates the plaintiff has only received the value for particular tiles to be replaced, not the actual cash value of the roof it alleges needs full replacement. *See* filing 77 at 10. Nor have the parties agreed on an actual cash value for the repairs to be done. And, the defendant has not agreed that it *would* pay replacement costs *if* the plaintiff performed the repairs. Instead,

---

[4] The repair-and-replace condition may be "absolutely excused" when an insured is forced to sell a building, or other situations where performance is rendered impossible. *D&S Realty*, 816 N.W.2d at 17-18. From the facts here, there's no indication that it would be impossible for the plaintiff to repair the roof.

drawing inferences in the plaintiff's favor, the record indicates that the defendant declined to cover the scope of repairs that the plaintiff asserts are necessary, and the defendant denied that much of the damage was caused by hail at all. It follows that the plaintiff's obligation to actually repair and replace the property has not yet been triggered.

The question, then, is to what damages is the plaintiff entitled:

> In most cases involving good faith denial of coverage, the interests of the parties would be adequately protected by granting a judgment to the insured for actual cash value and, in addition, a declaratory judgment that the insured will be reimbursed for the difference between actual cash value and any repair/replacement costs actually conducted within the time stated in the policy, running from the time of the judgment.

*D&S Realty*, 816 N.W.2d at 19. Nebraska courts have recognized three approaches to determining actual cash value: "(1) [W]here market value is easily determined, actual cash value is market value, (2) if there is no market value, replacement or reproduction cost may be used, (3) failing the other two tests, any evidence tending to formulate a correct estimate of value may be used." *Henn v. Am. Family Mut. Ins. Co.*, 894 N.W.2d 179, 184 (Neb. 2017) (quoting *Olson v. Le Mars Mut. Ins. Co. of Iowa*, 696 N.W.2d 453, 458 (Neb. 2005)) (alterations in original).

Here, the defendant argues that the plaintiff has no evidence of actual cash value damages. The standard at summary judgment is not whether evidence would be admissible at trial, but "whether it *could be* presented at trial in an admissible form." *Gannon Intern., Ltd. v. Blocker*, 684 F.3d 785, 793 (8th Cir.

2012) (emphasis in original). The plaintiff has evidence of the replacement cost value of the repairs it contends must be completed, and the Court is not persuaded that the plaintiff is unable to produce evidence of the actual cash value of those repairs at trial.

### *Bad Faith*

The defendant argues the plaintiff cannot prevail on its bad faith claim because it "has no admissible evidence establishing causation, has not satisfied the policy's conditions precedent to replacement cost recovery, and has failed to produce competent evidence of recoverable actual cash value damages." Filing 67 at 13. But for the reasons explained above, the plaintiff has evidence of causation, and is not yet required to actually repair or replace the roof.

The plaintiff's evidence supports its version of events: that the defendant inadequately investigated the damages caused, and the defendant's valuation of the damage bore no reasonable relationship to the estimates by the adjusters and engineers who inspected the church. *See* filing 77 at 15; *LaRette v. Am. Med. Sec., Inc.*, 705 N.W.2d 41, 50 (Neb. 2005) (plaintiff can show bad faith by indicating an "absence of a reasonable basis" for denying a claim). The motion for summary judgment on this issue will be denied.

### 2. MOTIONS TO EXCLUDE

The defendant seeks to exclude two of the plaintiff's experts. The plaintiff seeks to exclude one of the defendant's experts. Both motions arise under the standard articulated in *Daubert v. Merrell Dow Pharm. Inc.*, 509 U.S. 579 (1993). The objective of the *Daubert* inquiry is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field. *Am. Auto. Ins. Co. v. Omega Flex, Inc.*, 783 F.3d

720, 722 (8th Cir. 2015). This is a flexible, case-specific inquiry: the Court must decide whether a particular expert had sufficient specialized knowledge to assist the factfinder in deciding the particular issues in the case. *Id.* at 723.

In exercising its gatekeeping function, the Court must make a preliminary assessment of whether the reasoning or methodology underlying the proposed expert testimony is valid and of whether that reasoning or methodology properly can be applied to the facts in issue, focusing specifically on the methodology and not the conclusions. *In re Wholesale Grocery Prod. Antitrust Litig.*, 946 F.3d 995, 1000-01 (8th Cir. 2019). To that end, expert testimony that is speculative, unsupported by sufficient facts, or contrary to the facts of the case, is inadmissible. *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 757 (8th Cir. 2006); *In re Wholesale Grocery Prod.*, 946 F.3d at 1001.

"Cases are legion that under *Daubert*, liberal admission is prevalent and courts should resolve doubts regarding the usefulness of an expert's testimony in favor of admissibility." *In re Wholesale Grocery Prod.*, 946 F.3d at 1001 (cleaned up). As a general rule, deficiencies in an expert's factual basis go to weight and not admissibility. *In re Bair Hugger Forced Air Warming Devices Prod. Liab. Litig.*, 9 F.4th 768, 786 (8th Cir. 2021); *Loudermill*, 863 F.2d at 570. Generally, an expert may, and often must, assume that the party for which he is testifying can prove the facts upon which he relies. *Crabar/GBF, Inc. v. Wright*, 142 F.4th 576, 588 (8th Cir. 2025). The method for testing those assumptions lies in "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof." *See id.* (quoting *Daubert*, 509 U.S. at 596).

### Duncan and Merrell

The plaintiff has designated two experts now the subject of the defendant's motion to exclude: Toby Duncan, a commercial and residential roofing consultant specializing in clay tile, slate, and copper roofs (filing 72-6), and Matthew Merrell,

13

a licensed professional civil engineer (filing 72-8). Specifically, the defendant seeks to exclude any opinions from these experts that a hail storm occurred on the property, that a storm caused the damage, any "site-specific" storm conditions (such as wind speed or hail size), or that the damage is attributable to a specific weather event. *See* filing 68 at 21, 29. The defendant makes no argument that the Court should exclude any opinions that the damage at issue was caused by hail.

Neither Duncan nor Merrell were deposed, *see* filing 73 at 1, and based on the record on summary judgment, it's not entirely clear to the Court what opinions are intended to be offered at trial. The defendant primarily seems to challenge the foundation upon which the experts rest their opinions about the cause of the damage at issue.

Merrell relied on industry-standard impact tests to determine that the damage he observed on the church's roof was consistent with damage caused by hail measuring 1.5 inches in diameter. Filing 72-7 at 3. Merrell also considered a consulting meteorologist's report that a hailstorm on April 12 passed over the subject property, and that storm produced hail measuring a maximum of 1.5 inches in diameter. *See* filing 72-7 at 53. And, Merrell relied on an interview with the church property committee indicating that the church's roof had been repaired in 2018, and there were no "cracked, chipped, or fractured tiles" following those repairs. Filing 72-7 at 3. Merrell's expert report concludes that "[i]mpact damage consistent with hail strikes was widespread at the church." Filing 72-7 at 4. It also concludes, "within a reasonable degree of engineering certainty, that the storm on April 12, 2020 damaged the subject property." *Id.*

The defendant argues that Merrell has no basis to opine about storm conditions on April 12, including whether a hailstorm occurred or the size of the hail. According to the defendant, engineers may not give opinions about these

14

kinds of "site-specific storm conditions." Filing 68 at 8 (citing *Davidson Surface/Air, Inc. v. Zurich Am. Ins. Co.*, No. 4:22-cv-547, 2024 WL 1674519, at *10 (E.D. Mo. Apr. 18, 2024); *Kar v. Safeco Ins. Co. of Am.*, No. 4:23-cv-207, 2025 WL 2305773, at *5 (E.D. Mo. Aug. 8, 2025)).

In *Davidson,* the court excluded an engineer's opinions about whether a particular storm produced two-inch hail, and whether that hail struck the roof at issue. 2024 WL 1674519, at *10. Those opinions were derived from a separate expert's report, and the court therefore concluded the opinions were outside the scope of the engineer's expertise. *Id.* Similarly, in *Kar*, a "historic building specialist" opined that a storm produced hail of a certain size and occurred on a specific day, based on the expert's evaluation of "verified hail reports" and other "weather data." *See* 2025 WL 2305773, at *4. Because the expert was not an expert in meteorology, the court determined he lacked the education, training, and experience to opine on whether "hail of any size" fell on the roof at issue on a specific date, and those opinions were excluded. *Id.* at *5.

It appears from the present record that the plaintiff is able to lay foundation as to Merrell's opinions about the April 12 storm. Merrell attests that he regularly relies on data from meteorologists to form opinions about the cause of damage, and such reliance is an industry standard. Filing 72 at 6; *see also Helping Hands Home Improvement, LLC v. Erie Ins. Exch.*, No. 3:21-cv-0008, 2022 WL 1063605, at *9-10 (M.D. Tenn. Apr. 8, 2022). Merrell's report considered other causes of damages, and specifically excluded "damage that appeared unrelated to high winds and hail." Filing 72-7 at 1 n.1. Merrell used the data from the meteorologist to support his findings about the damage to the roof, and that such damage is consistent with 1.5-inch hail; based on the record before the Court, that meteorological data is being used to *support* his conclusions based on his expertise, not supplant them. The defendant challenges the factual basis and

15

foundation of Merrell's conclusions, but in this Court's view, those arguments go to weight and not admissibility. *Crabar/GBF*, 142 F.4th at 588-89.

The defendant also seeks to exclude Duncan's opinions involving assumptions that hail of a particular size struck the property. While Duncan cannot give *expert* testimony that a hailstorm on April 12 caused the damage, he is not precluded from giving lay testimony regarding the same. Duncan was in Lincoln the day of the alleged hailstorm, and he visited the plaintiff's church property. Filing 74 at 3. He may give expert testimony that, through his professional experience, what he saw appeared to be consistent with hail damage. And, based on his personal knowledge of the weather conditions on April 12, he may testify as to his observations of the size or other characteristics of the hail. *See Davidson Surface*, 2024 WL 1674519, at \*7; *see United States v. Williams*, 41 F.4th 979, 984 (8th Cir. 2022); *Burlington N. R.R. Co. v. State of Neb.*, 802 F.2d 994, 1004 (8th Cir. 1986).

The defendant's motion will be granted in part. Neither Merrell nor Duncan may provide expert opinions that hail of a particular size struck the church on April 12, 2020. However, both may provide the reason they believe hail of a certain size struck the building. Merrell relied on a meteorological consultant to confirm his measurements and the physical indication of certain-sized hail. Duncan relied on his measurements and personal experience with the hail to draw similar conclusions. Cross-examination is the proper method to attack the factual bases upon which these opinions rest.

*Hobson*

The plaintiff seeks to exclude the opinions of Vincent Hobson, the defendant's expert witness. Filing 69. Hobson inspected the church roof at the defendant's request, and issued a report in August 2022. The plaintiff argues that Hobson's opinions are "unsupported conjecture" and should be excluded. Filing

70 at 10. The plaintiff identifies several instances where it argues Hobson based his opinion "solely on assumption, not evidence." Filing 70 at 5.

It's clear from Hobson's deposition testimony that he based his opinions on his fifty years of experience in roofing and tiles. That experience is an appropriate foundation upon which to base expert testimony, including the testimony that an HVAC installation process damaged the tile, that the specialty tile may have manufacturing defects, or that the damage was not widespread enough to have been caused by hail. The plaintiff's arguments all go to weight, not admissibility, and the motion to exclude will be denied. The plaintiff is welcome to challenge, through cross examination and presentation of contrary evidence, Hobson's conclusions—that is, after all, what cross-examination is for. *E.g., Crabar/GBF,* 142 F.4th at 588. The motion is denied.

## IV. CONCLUSION

The plaintiff has presented sufficient evidence from which a reasonable juror could infer that hail caused the damage at issue, that the building was covered by the insurance policy at the time of the damage, and that the defendant failed to pay the plaintiff what the policy promised. Further, a reasonable juror could conclude that the defendant acted in bad faith when it provided payments not reasonably based on any estimate from its adjusters. Of course, a jury will have to make factual determinations based on the evidence presented. That is the purpose of a trial. For the foregoing reasons,

IT IS ORDERED:

1. The defendant's motion for summary judgment (filing 64) is denied.

2. The defendant's motion to exclude or limit the plaintiff's expert testimony (filing 65) is granted in part.

3. The plaintiff's motion to exclude the defendant's expert (filing 69) is denied.

4. The plaintiff's motion for leave to file a sur-reply (filing 86) is denied.

Dated this 15th day of May, 2026.

BY THE COURT:

John M. Gerrard
Senior United States District Judge